**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

HALVER BAILEY, LEVI R. LIBRA, and ALLEN LECUYER, on behalf of themselves and other past and present employees similarly situated,

Plaintiffs,

v.

AMERIQUEST MORTGAGE COMPANY,

Defendant.

Civil No. 01-545 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

---

Donald H. Nichols, Paul J. Lukas, NICHOLS, KASTER & ANDERSON, PLLP, 4644 IDS Center, 80 South Eighth Street, Minneapolis, MN, 55402, for plaintiffs.

Robert Reinhart, DORSEY & WHITNEY, 50 South Sixth Street, Minneapolis, Minnesota, 55402; Arthur Chinski, Ruth Seroussi, Elizabeth Murphy, BUCHALTER NEMER FIELDS & YOUNGER, 601 Figueroa Street South, Suite, 2400, Los Angeles, California, 90017, for defendant.

Plaintiffs, a group of account executives, bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, against defendant Ameriquest Mortgage Company to recover unpaid overtime compensation. Defendant moves to dismiss, or alternatively, to stay proceedings and compel arbitration based on the terms of an arbitration agreement each plaintiff signed as a condition of his or her employment

FILED JAN 23 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

with defendant. Defendant also moves to dismiss plaintiffs' complaint for failure to state a claim under Rule 12(b)(6). For the reasons that follow, the Court denies defendant's motion in its entirety.

## BACKGROUND

Plaintiffs are current or former "account executives" employed by defendant at its 190 branch offices nationwide. Account executives are responsible for soliciting loans from its customers. They make telephone "cold calls" and take applications from interested customers. The application is then forwarded to defendant for processing and an approval decision. If approved, the loan is returned to the account executive who attempts to sell it to the customer. Account executives have no authority to approve a loan, or sell a loan outside the range of approved terms. Despite routinely working more than 40 hours per week to meet defendant's mandatory performance goals, plaintiffs claim they were not paid for these overtime hours.

As a condition of hire, plaintiffs were required to sign a Mutual Agreement to Arbitrate Claims ("Agreement" or "arbitration agreement") calling for arbitration of any and all disputes relating to plaintiffs' employment. The Agreement, drafted by defendant, states:

> The Company and I mutually consent to the resolution by arbitration of all claims ("claims"), whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company or against its officers, directors, employees or agents in their capacity as such or otherwise. The claims covered by the Agreement include, but are not limited to, claims for wages or other compensation due . . . and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance . . . .

Agreement at 1.[1]

On March 28, 2001, plaintiffs brought this action under the FLSA on behalf of themselves and other account executives who worked overtime hours without compensation. At the time of the motion hearing, ten other account executives had joined this action by filing consent forms with the Court pursuant to 29 U.S.C. § 216(b) of the Act.[2] Defendant employed these plaintiffs in branch offices throughout the country, including Alabama, California, Florida, Iowa, Illinois, Minnesota, Oklahoma, Tennessee and Utah. Defendant responded to plaintiffs' complaint by filing this motion to compel arbitration on the basis that plaintiffs' claims for unpaid overtime wages under the FLSA are precisely the type of statutory claims that plaintiffs agreed to arbitrate.

## ANALYSIS

### I. Federal Arbitration Act Applicability

Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Substantively, the FAA requires a court to enforce a written arbitration agreement as it would any other contract. 9 U.S.C. § 2 ("A written provision . . . to settle by arbitration a controversy . . . shall be valid,

---

[1] Prior to receiving and signing the arbitration agreement, plaintiffs were notified in both their application for employment and letter of offer for employment that they would be required to sign such an agreement as a condition of their employment.

[2] The record reveals that each additional plaintiff who has since joined this action completed the same documentation as the named plaintiffs.

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). Last term, in *Circuit City Stores, Inc. v. Adams,* 121 S. Ct. 1302 (2001), the Supreme Court resolved any lingering question concerning the FAA's applicability to arbitration agreements in the employment context by holding that with limited exception, arbitration agreements covering employment-related claims fall within the FAA's provisions. *Id.* at 1311 (holding that in the employment context "only contracts of employment of transportation workers" are exempted from the FAA's coverage).

It is clear that the FAA governs the arbitration agreement at issue in this case. It is also clear that the present dispute for recovery of unpaid overtime wages under the FLSA falls squarely within the plain terms of the Agreement. The dispute turns on whether the Agreement is enforceable.

## II. Enforceability of the Agreement

The parties raise various arguments as to why the arbitration agreement in this case should or should not be enforced. Defendant argues that the Court should find the Agreement valid and enforceable because it represents a mutual agreement between the parties to arbitrate the claims at issue in this case. The Agreement, defendant emphasizes, is supported by an offer, acceptance and consideration, contains fair and neutral terms, and affords plaintiffs the full array of statutory remedies available under federal law.

In response, plaintiffs argue that the arbitration agreement that they each signed as a condition of their employment require plaintiffs to relinquish their substantive rights

under the FLSA. These substantive rights include a two or three year statute of limitations; the right to proceed in a convenient jurisdiction of their choice; the right to prosecute their claim absent fees and costs that would not be incurred in a judicial proceeding; and the right to pool their resources and prosecute their claim in one action as a collective class. Because the arbitration agreement requires plaintiffs to surrender each one of these rights, it is plaintiffs' position that the Agreement deters plaintiffs from bringing their statutory claims, undermines the federal statutory scheme created by Congress and is thus unenforceable.

In reviewing agreements governed by the FAA, the Supreme Court has emphasized that courts must keep in mind that the FAA evinces a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), the Supreme Court upheld an arbitration agreement of plaintiff's claim under the ADEA. *Id.* at 35. In so holding, the Court concluded that "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Id.* at 26 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). The Court further noted that "'[s]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function.'" *Id.* at 28 (quoting *Mitsubishi Motors*, 473 U.S. at 637).

*Gilmer* thus reaffirms the FAA's presumption in favor of enforcing agreements to arbitrate, even those agreements that cover statutory claims. However, as several courts have noted, this presumption is not without limits. *Shankle v. B-G Maint. Mgmt. of Colorado, Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999) (recognizing FAA presumption in favor of enforcing agreements to arbitrate but "conclud[ing] that it is not without limits"); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1482 (D.C. Cir 1997) (noting that "*Gilmer* cannot be read as holding that an arbitration agreement is enforceable no matter what rights it waives or what burdens it imposes"). By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute. Consequently, courts must ensure that the agreement in question is in fact merely a change of forum and not a relinquishment of an individual's substantive statutory rights. This determination, the Supreme Court has observed, must be made on a case by case basis. *Gilmer*, 500 U.S. at 33 ("As with the claimed procedural inadequacies discussed above, this claim of unequal bargaining power is best left for resolution in specific cases").

In this case, the arbitration agreement plaintiffs signed as a condition of their employment requires plaintiffs to: 1) bring suit within a year of when their claim accrued; 2) pay for one-half of the expenses associated with arbitration; 3) travel to California to litigate their claim; and 4) pursue their claim individually rather than collectively.

As an initial matter, the Court notes the context in which the arbitration agreements at issue in this case are entered into. Unlike in either the collective bargaining or private commercial contexts, these plaintiffs did not have a union representative protecting their interests, nor were the parties sitting across the table from

each other negotiating the terms of the contract. *Cole*, 105 F.3d at 1472-79 (discussing the differences between arbitration in the context of collective bargaining and mandatory arbitration of statutory claims outside the context of a union contract). Rather, these agreements were presented to plaintiffs on a take-it-or-leave-it basis. The agreement was drafted entirely by defendant and offered to plaintiff to sign as a condition of his or her employment. Consequently, it is the Court's view that agreements of this nature are more susceptible to the presence of unconscionable terms than in other contexts. The court in *Cole* made the same observation. 105 F.3d at 1477 ("[M]andatory arbitration agreements in individual employees' contracts often are presented on a take-it-or-leave it basis; there is no union to negotiate the terms of the arbitration agreement. Thus, employers are free to structure arbitration in ways that may systematically disadvantage employees."). As in *Cole,* the Court believes it important to review the arbitration agreement with this context in mind.

### A. Statute of Limitations

The FLSA provides for a two-year statute of limitations with an additional third year if the employer's conduct was willful. 29 U.S.C. § 255(a).[3] The arbitration agreement, however, provides for only a one-year limitations period. Leaving no room for interpretation, the provision states that the one-year limitation period applies "even if there is a federal or state statute of limitations which would have given more time to

---

[3] The statute provides, in relevant part, that a cause of action for unpaid overtime compensation must "be commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

pursue the claim." Agreement at 2. It further states that claims brought outside of this period are "void and deemed waived." *Id.*

Defendant argues that the shorter statute of limitations does not render the agreement unenforceable. Citing *Collins v. Environmental Sys. Co.*, 3 F.3d 238, 241 (8th Cir. 1993) as support, defendant argues that under Minnesota law, parties may contractually agree to waive or shorten the applicable statute of limitations so long as the agreed-upon time period is reasonable. *Id.* at 241-42 ("In circumstances where a contract has prescribed a period for bringing suit that is shorter than the limitations period, the Minnesota Supreme Court has required that the interval be a reasonable one.") (citing *Hayfield Farmers Elevator & Mercantile Co. v. New Amsterdam Co.*, 282 N.W. 265, 269 (Minn. 1938)). However, *Collins* is not an employment case. Rather, it involves claims related to two promissory notes and a stock transfer between a corporation and a financial lending institution. *Id.* at 241. The factual circumstances of *Collins* are thus distinguishable from the case at bar.

Moreover, the shortening of the statute of limitations is particularly troubling under the facts of this case because of the role the limitations period plays in determining a plaintiff's recovery under the statute. Under the FLSA, the scope of an employer's liability and thus a plaintiff's measure of damages is directly tied to the limitations provision. That is, a plaintiff who demonstrates a violation of the FLSA is entitled to recover unpaid overtime wages for the two-year limitations period provided in § 255(a). However, a finding of willfulness extends the limitations period from two to three years, thereby allowing a plaintiff to recover damages for an extra year. *Soler v. G & U Inc.*,

628 F. Supp. 720, 723 (S.D.N.Y. 1986) (concluding that defendants are subject to an additional year of liability for a willful violation of the FLSA); *Pautlitz v. City of Naperville*, No. 98-C-8855, 1994 WL 22963 at *4 (N.D. Ill. 1994) (determining whether the two-year or three-year limitations period applies for purposes of assessing damages on summary judgment motions); *Pollis v. New School for Social Research*, 132 F.3d 115, 120 (2d Cir. 1997) (explaining that compensatory damages are calculated by reference to the three-year limitations period for willful violations, and the resulting compensatory award should be doubled pursuant to the Fair Labor Standards Act's liquidated damages provision).

The one-year limitations period in the arbitration agreement is thus fundamentally at odds with the statutory scheme of the FLSA, both procedurally and substantively: it not only shortens the period of time for bringing a FLSA claim, but more importantly, it limits a plaintiff's damage recovery. Courts have declared arbitration agreements unenforceable where such agreements limit the statutory remedies created by Congress. *Paladino v. Avnet Computer Tech. Inc.*, 134 F.3d 1054, 1060 (11th Cir. 1998) (holding arbitration agreement unenforceable where language construed to proscribe arbitral award of Title VII damages); *Perez v. Globe Airport Sec. Servs. Inc.*, 253 F.3d 1280, 1285-86 (11th Cir. 2001) (arbitration provision requiring plaintiff to share equally all fees and costs denies plaintiff access to a statutorily-created remedy under Title VII which allows a prevailing party to recover fees and costs). The same result applies here. By shortening the limitations period to one year and failing to provide for greater liability for a willful violation, the arbitration agreement denies plaintiffs "access to a remedy

Congress made available to ensure violations of the statute are effectively remedied and deterred." *Perez*, 253 F.3d at 1287.

### B. Fee Splitting Provision

The arbitration agreement in this case also requires plaintiffs to incur fees and costs in pursuit of their statutory rights that they would not otherwise incur in a judicial forum. The provision, entitled Arbitration Fees and Costs, provides:

> The Company and I shall equally share the fees and costs of the Arbitrator. Each party will deposit funds or post other appropriate security for its share of the Arbitrator's fee, in an amount and manner determined by the Arbitrator, 10 days before the first day of [the] hearing. Each party shall pay for its own costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorney's fees, or if there is a written agreement providing for fees, the Arbitrator may award reasonable fees to the prevailing party.

Agreement at 3. Several circuit courts have voiced disapproval of fee-splitting provisions similar to the provision at issue here. *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465 (D.C. Cir. 1997); *Shankle v. B-G Maintenance of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999).

In *Shankle*, the arbitration agreement that plaintiff signed as a condition of his employment required, as here, that he pay one-half of the arbitrator's fees. 163 F.3d at 1232. The court estimated that it would cost plaintiff between $1,875 and $5,000 to resolve his claim, a cost which the court determined neither plaintiff nor other similarly situated employees could afford:

> The agreement thus placed Mr. Shankle between the proverbial rock and a hard place—it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum.

*Id.* at 1235. The court concluded that the fee-splitting provision undermined the remedial and deterrent functions of the federal anti-discrimination laws and on this basis alone declared the agreement unenforceable. *Id.*

In *Cole,* the court upheld the arbitration agreement as valid, but only after it construed the agreement to require the employer to pay **all** the arbitrator's fees. 105 F.3d at 1485 (emphasis added). The court found it necessary to construe the agreement in this manner to ensure that plaintiff received a full and fair resolution of his statutory claim. *Id.* To hold otherwise, the court concluded, "would undermine Congress's intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be required to pay for a judge in court." *Id.* at 1484. The court found it unlikely that a plaintiff would pursue his statutory claim if required to expend arbitrators' fees, a cost ranging from $500 to $1000 per day or more, in addition to the administrative and attorney's fees required to pursue a claim in either forum. *Id.* ("These fees would be prohibitively expensive for an employee like Cole, especially after being fired from his job, and it is unacceptable to require Cole to pay arbitrator's fees, because such fees are unlike anything that he would have to pay to pursue his statutory claims in court.").

The Court is persuaded by these decisions and finds that the fee-splitting provision discourages plaintiffs from pursuing their statutory claim under the FLSA.

### C. Venue and Collective Action under § 216(b)

Under the FLSA, employees are entitled to bring their claims in "any Federal or State court of competent jurisdiction" and are allowed to pool their resources and proceed collectively with other similarly situated individuals. 29 U.S.C. § 216(b). The arbitration agreement, on the other hand, requires plaintiffs to travel to California to litigate their FLSA claim and is silent as to whether employees can proceed collectively in arbitration.[4]

Defendant argues that both the venue and collective action provisions contained in the FLSA are merely procedural rights and, as such, do not prevent plaintiffs from vindicating their individual claims under the Act. To support this argument, defendant points out that in *Gilmer,* the Supreme Court rejected virtually the same argument concerning class-wide relief that plaintiffs raise here. 500 U.S. at 32. Defendant also relies on *Johnson v. West Suburban Bank*, 225 F.3d 366 (3d Cir. 2000), in which the Third Circuit held that although an arbitration agreement may deprive a plaintiff of the procedural right to proceed as part of a class, a plaintiff nevertheless retains the full range of substantive rights to proceed individually with his or her claim. *Id.* at 373-75.

Contrary to defendant's position, the Court holds that the deprivation of procedural rights guaranteed by Congress can have a real and detrimental impact on an

---

[4] The venue provision states:

> The arbitration shall take place in or near the city in which I am or was last employed by the Company, if I am or was employed in the State of California. If I am or was employed outside the State of California, then at the Company's headquarters in Orange, California.

Agreement at 2.

individual's ability to effectively vindicate his or her substantive statutory rights. This is no more true than under the particularized facts of this case. As plaintiffs emphasize, the size of each individual plaintiff's claim for overtime wages is relatively small. Absent the procedural safeguards guaranteed by Congress, most, if not all, the plaintiffs will likely forego pursuing their claims. As one district court observed nearly sixty years ago, the venue provision is a critical right for plaintiffs desiring to pursue a FLSA claim:

> [T]he legislative purpose, in harmony with the prompting impulse of the Fair Labor Standards Act, was to grant a broad jurisdiction for the enforcement of the obligations imposed under the act, and specifically to vest the plaintiff employee with the election between the available courts. The reasons for that course are manifest. **It was and is obvious that, except in very rare group or class actions, the amount of potential recovery under the act will be so small that the aggrieved employee will be tempted to abandon the vindication of his right unless he may institute his suit and prosecute it to effect in a court of his own choice, within his immediate neighborhood, and without burdensome and disproportionate expense both in money and in time.** To that end, the court considers that the congress employed apt language, in providing that the suits arising under the law "might be maintained in any court of competent jurisdiction."

*Booth v. Montgomery Ward & Co.*, 44 F. Supp. 451, 455 (D. Neb. 1942) (emphasis added).

Additionally, the Court does not read *Gilmer* to hold that procedural deficiencies can never deprive an individual from effectively vindicating his or her substantive rights. In *Gilmer*, the plaintiff argued that arbitration procedures cannot adequately further the purposes of the ADEA because they do not provide for broad equitable relief and class actions. *Id.* at 32. The Court rejected the plaintiff's argument because the record revealed that the NYSE rules applicable in that case **did** provide for collective proceedings. *Id.* While the Court noted in dicta that the absence of class-wide relief

does not bar an individual from pursuing his or her claim, the Court also emphasized that these determinations must be made on a case-by-case basis. *Id.* at 33 (emphasizing that claims of procedural inadequacies are "best left for resolution in specific cases.").

Applying that case by case principle to the facts of this case, the Court finds that the inability to proceed collectively, particularly when considered in connection with the venue and other provisions discussed above, has the effect of rendering plaintiff's individual claims impractical to pursue. The right to proceed collectively is particularly critical to these plaintiffs, who, as previously mentioned, have relatively small individual claims. *Hoffman La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (noting that collective actions under the FLSA allow plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources"). Moreover, when all the procedural hurdles contained in the Agreement are considered together—the need to travel to defendant's forum, pay half the costs of the arbitrator, proceed individually rather than collectively, and the limitation of damage recovery, the likely result is obvious: the cost of bringing the claim will quickly outweigh any potential recovery under the Act. For these reasons, the Court concludes that the Agreement in this case is not merely a change in forum but rather deters plaintiffs from vindicating their substantive rights under the FLSA.

## III. Modification and Severability

At oral argument, defendant offered to modify the arbitration agreement by agreeing to cover all the costs and fees associated with the arbitration and to consider arbitrating plaintiffs' claims in venues other than California. However, the agreement

expressly provides that any modification must be in writing and signed by the parties. Agreement at 4. Because these requirements were not satisfied, defendant's attempt to modify the agreement is ineffectual. Defendant then pointed to the severability clause contained in the agreement,[5] and argued that the Court could sever those portions of the agreement it finds invalid in order to preserve the rest of the Agreement. For the reasons that follow, the Court declines this invitation.

Courts have held that the presence of an unlawful provision in an arbitration agreement can taint the entire agreement, thus making judicial reformation inappropriate. *Graham Oil Co. v. Arco Prods. Co.*, 43 F.3d 1244 (9th Cir. 1995); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1058-60 (11th Cir. 1998); *Perez v. Globe Airport Sec. Servs. Inc.*, 253 F.3d 1280, 1287 (11th Cir. 2001). In *Graham Oil*, the Ninth Circuit struck the entire arbitration clause rather than simply the offensive provisions because "the offensive provisions clearly represent an attempt by [defendant] to achieve through arbitration what Congress has expressly forbidden." *Id.* at 1249. In *Paladino*, the court also declared the entire arbitration agreement unenforceable because it was "fundamentally at odds with the purposes of Title VII." *Id.* at 1060. Finally, in *Perez,* the court declined to sever the costs and fees provision of the arbitration agreement and force the employee to arbitrate his Title VII claim because to do so "would reward the

---

[5] The severability provision in the Agreement provides:

> If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement.

Agreement at 4.

employer for its actions and fail to deter similar conduct by others." *Id.* at 1287. The court further explained:

> If an employer could rely on the courts to sever an unlawful provision and compel the employee to arbitrate, the employer would have an incentive to include unlawful provisions in its arbitration agreements. Such provisions could deter an unknowledgeable employee from initiating arbitration, even if they would ultimately not be enforced. It would also add an expensive procedural step to prosecuting a claim; the employee would have to request a court to declare a provision unlawful and sever it before initiating arbitration.

*Id.* The Eighth Circuit recently recognized that severance is not always appropriate. *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677 (8th Cir. 2001), In *Gannon*, the court held that an arbitral provision limiting punitive damages was unenforceable but severable under the agreement. In so holding, however, the court "recognized that in certain situations one party may include so many invalid provisions that the validity of the entire agreement would be undermined." *Id.* at 681. Such is the case here. The Court concludes that the number of invalid provisions found in the Agreement taints the entire agreement and renders severability inappropriate. For these reasons, the Court finds the agreement unenforceable and denies defendant's motion to compel arbitration.

## IV. Motion to Dismiss

Defendant also moves for dismissal pursuant to Rule 12(b)(6) on the basis that plaintiffs' complaint fails to state a claim upon which relief may be granted. Upon review of plaintiffs' complaint and consideration of applicable legal standards, the Court denies defendant's motion.

The Federal Rules of Civil Procedure require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A Rule 12(b)(6) motion to dismiss a complaint should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Schmedding v. Tnemec Co. Inc.*, 187 F.3d 862, 864 (8th Cir. 1999). In determining the sufficiency of a complaint, a court must liberally construe the complaint in the light most favorable to plaintiff and assume all facts alleged in the complaint as true. *Id.*

The Court finds that plaintiffs' complaint satisfies the notice pleading standards to survive defendant's motion. *Lederman v. Cragun's Pine Beach Resort*, 247 F.3d 812, 818 (8th Cir. 2001) (The federal rules "merely require the plaintiff to provide a statement of her claim that give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests"). Although not extravagant in detail, plaintiffs' complaint provides sufficient information to provide defendant fair notice of plaintiffs' FLSA claim and the grounds upon which it rests. It identifies the plaintiffs by name, the collective class by job title and method of joinder, the compensation practice at issue (overtime wages), the statute that was violated (FLSA), and the relief sought. Accordingly, defendant's motion to dismiss under Rule 12(b)(6) is denied.

## ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that the motion of defendant Ameriquest Mortgage Company to dismiss, or in the alternative to stay and to compel arbitration [Docket No. 7] is **DENIED**.

DATED: January 23, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge